### JOHN (RED) JENKINS V. THE STATE.

No. 22597. Delivered October 27, 1943.
Rehearing Denied November 24, 1943.

The opinion states the case.

*E. J. McLeroy,* of Center, for appellant.

*Spurgeon E. Bell,* State's Attorney, of Austin, for the State.

KRUEGER, Judge.

Appellant was convicted of the offense of murder without malice and his punishment was assessed at confinement in the State penitentiary for a term of three years, from which judgment he prosecutes this appeal.

He brings forward for review a great number of questions each of which he contends presents reversible error. His first contention is that the court erred in declining to sustain his motion to quash the indictment, which contains six counts, but inasmuch as the court submitted the case to the jury on the fifth count alone, we need not consider any of the others.

Omitting the formal parts thereof, it is charged in said count as follows: "John (Red) Jenkins, on or about the 29th of January, A. D., 1943, in the County and State aforesaid, did then and there unlawfully drive and operate a motor vehicle, to-wit, a truck upon public highway 35 from Timpson to Joaquin through Tenaha, while then and there intoxicated and under the influence of intoxicating liquor, and while so driving and operating said truck, did through accident and mistake kill and murder James Wilburn Watson by driving said truck into and against the automobile occupied by the said James Wilburn Watson, thereby and therewith causing his death."

In support of his contention, the appellant, in his brief, cites us to the case of Middleton v. State, 25 S. W. (2d) 614. We do not think this case is at all applicable here. In that case the indictment charged that the accused "did then and there unlawfully and voluntarily and with malice aforethought kill J. J. Middleton by poisoning him with strychnine" without any averment as to how or in what manner the strychnine was administered.

Article 1197, P. C., provides as follows: "Whoever shall mingle or cause to be mingled any noxious potion or substance with any drink, food or medicine, with intent to kill or to injure any other person, or shall wilfully poison or cause to be poisoned any spring, well, cistern or reservoir of water with such intent, shall be confined in the penitentiary not less than two or more more than ten years."

It will be noted that the article of the statute above quoted provides different ways in which the offense may be committed. Therefore, the State, in order to charge the offense in the language of the statute, was required to specifically charge that the accused resorted to one of the ways or methods denounced

by the article of the statute. The State having failed in this respect, the indictment was insufficient, but such is not the case here. In the instant case, the indictment charged the offense in the language of Article 802, P. C., which is ordinarily sufficient. See 23 Tex. Jur. p. 635, sec. 34, and cases cited; also Ardovina v. State, 156 S. W. (2d) 983; Kuykendall v. State, 160 S. W. (2d) 525; Jones v. State, 75 S. W. (2d) 683; Houston v. State, 143 Tex. Cr. R. 460. In addition to the Middleton case, supra, appellant cites us to many others, but none of them support his position. We therefore overrule his contention.

Appellant's next contention is that the evidence is wholly insufficient to justify and sustain his conviction of murder without malice. Upon a careful review of the record, we have reached a contrary conclusion. There was evidence introduced showing that the appellant and his companions had a bottle of whisky in their truck; that they stopped at a barber shop and gave the barber a drink; that they came by appellant's sister-in-law and gave her a drink; that while on the road driving the truck he would weave from side ot side; that at the time of the collision appellant was over on the left-hand side of the road instead of being over on the right-hand side; that while appellant was driving his truck on the left-hand side of the road it collided with the car which was driven and operated by James Wilburn Watson, the deceased, and thereby caused Watson's neck to be broken in the collision. We think these facts were sufficient from which the jury could reasonably draw the conclusion that appellant was intoxicated at the time of the unfortunate occurrence.

Appellant addressed a number of objections to the court's charge. A careful review of the charge convinces us that the court gave a very liberal and comprehensive instruction to the jury on the law applicable to the facts of the case. Appellant contends that since the court did not define "accident" and "mistake" as applicable to the law under which he was being prosecuted, it left the jury to conjecture and speculation as to its proper application; that the words "accident" and "mistake" are technical terms and the jury should have been enlightened as to the true meaning of the same. We are not in accord with this contention. "Accident" and "mistake" are terms well understood by the average person and we see no need of entering upon a discussion of the terms which may confuse rather than clarify the meaning thereof.

By Bill of Exception No. 2-A, appellant complains because the court failed to instruct the jury on the law of circumstantial

evidence. It appears from the court's charge that he did instruct the jury relative to the law of circumstantial evidence. Hence appellant's complaint is not sustained by the record.

By Bill of Exception No. 3 appellant complains of the closing argument of the District Attorney to the jury as follows: "They just want you to believe, gentlemen of this jury, that if you have the least little suspicion that this boy was driving over on the wrong side—now, you better just turn this fellow loose and let him go, and that is why he reads to you circumstantial evidence charge. Now, let's get that circumstantial evidence charge out of this case to begin with. If it has any application to any fact in this case it is the one lone fact—an issue of whether or not this defendant was under the influence of intoxicating liquor."

Appellant objected to the argument on the ground that the same was beyond the instruction of the court and outside the record, whereupon the court instructed the District Attorney to stay within the record, to which the District Attorney replied: "I am in the record and I am in the charge"; and thereupon proceeded to make the following remarks: "Do you have to depend on circumstantial evidence to establish the fact that he was driving his car—who said that this defendant was on his side of the road and that the deceased came over and across the center line and ran into him? Mr. McLeroy made complaint because I didn't put the other two people who were with him on the stand and show what was wrong with that truck; and yet Mr. McLeroy knows he had the same right— they were here in the Court."

Appellant again objected, which objection was overruled by the court, whereupon the District Attorney continued as follows: "Oh, yes. He not only had the right to put them on, but he complains because I did not put them on to show that the truck was not in bad condition. Why didn't he give the defendant some help with those two saving witnesses to show that there was something wrong with that truck. The Court instructs you about an accident or mistake. Gentlemen, you will live a long time but you won't live long enough to ever hear of a man being so intoxicated and so lucky. You know, the accident in this case is that he didn't kill more than he did kill. There is where your accident is, gentlemen. The accident lies in the fact that Frank Crawford isn't dead; that Oscar Myers isn't dead; that Gus Trammel isn't dead; that Kenneth McFarland's little child isn't dead."

Appellant objected to all of the above-quoted remarks on the ground that the same were inflammatory and not supported by the evidence, which objection was overruled by the court.

The bill is qualified by the court, who certifies in his qualification that the argument did not constitute an invasion of the province of the jury or the court's instruction; nor was it outside the record and without support; that the District Attorney was attempting to draw a difference between an "unavoidable accident," as used by the court, and an "accident and mistake," as used in the charge. The court further stated that the men mentioned by the District Attorney had testified that just prior to and just after the accident the defendant had almost run over them with his truck. Appellant accepted the bill with the court's qualification and is bound thereby. As thus qualified, the bill fails to reflect any reversible error.

By Bill of Exception No. 5 appellant complains of the testimony elicited by the State from Dr. J. M. Parker, who testified in behalf of the State that he examined the body of James Wilburn Watson shortly after the accident to ascertain the cause of his death and expressed the opinion from the examination made by him that death was caused by the impact of the heavy truck running into a lighter car and resulted in breaking the neck of the deceased which produced instant death. Appellant objected to this testimony on the ground that nowhere was it alleged in the indictment that the deceased sustained any character of injury as a result of the collision. It will be noted, however, that it was charged in the indictment that the appellant, with his truck, ran into the car being driven by the deceased and thereby killed him. We think that the evidence objected to was admissible under said allegations.

It appears from Bill of Exception No. 8 that the District Attorney, in the development of the State's case, placed one, Kenneth McFarland, on the witness stand. He testified that he was in the town of Timpson on the day in question; that he observed the truck driven by appellant approaching a filling station; that he observed the manner in which it was operated and the way appellant backed his truck upon the gas pumps. Thereupon, the District Attorney asked him whether or not, in his opinion, the appellant was under the influence of intoxicating liquor, to which he objected as calling for the expression of an opinion as to whether he was under the influence of intoxicating liquor without stating any fact as a basis for such an opinion. The court sustained the objection and excluded the

testimony and instructed the jury not to consider the same; whereupon the District Attorney again entered upon the subject sought to be elicited from the witness and proved by him that while he was at the filling station in Timpson about 6:10 P. M., on the day in question he heard a squeaking noise; that he looked up the highway and saw the truck weaving back and forth on the road (indicating); that he thought the truck was going into the ditch; that appellant drove up to the filling station with his brakes on; that appellant backed the truck so that it missed the parked car of the witness only about four or five inches; that he had occasion to see people driving motor vehicles on public highways while under the influence of intoxicating liquor; that in his opinion appellant was under the influence of intoxicating liquor; to all of which appellant objected, which objection was overruled, and he then and there excepted. The court qualified the bill by referring to the testimony of the witness as contained in the statement of facts. While the facts testified to by the witness upon which he based his opinion are meager and of little probative force, yet we would not be authorized to say that there was not any evidence upon which he could reasonably base an opinion as to whether appellant was under the influence of intoxicating liquor.

Bill of Exception No. 9 does not bear any certificate of the trial court as to its correctness. Hence, the same cannot be considered. See Riddle v. State, 107 Tex. Cr. R. 571.

Bill No. 10 reflects that appellant's witness, Waldo Hairgrove, who had testified on direct examination as to appellant's good reputation as a law-abiding citizen, was asked on cross-examination if he had not heard that some time in the past appellant had been in jail at Timpson, to which appellant objected on the ground that it called for hearsay testimony, and requested the court to declare a mistrial because the inquiry was not confined to a time not too remote; nor did it tend to show moral turpitude. The court reminded the State's Attorney of the rule of evidence relative to such matter, whereupon the District Attorney withdrew the question. The court immediately instructed the jury that the question was withdrawn and that they should not consider it. We do not think that the mere asking of the question, which was immediately withdrawn and the jury instructed not to consider the same, was of such prejudicial nature as to require a reversal of the case. We are at a loss to understand why some State's attorneys will depart from the well-established rules of evidence. If they are not aware of these rules, they should inform themselves before venturing out

on unknown ground. Such conduct frequently results in a reversal of a case when otherwise it would have been affirmed.

Bill of Exception No. 12 reflects the following occurrence: After Gus Trammel, a witness for the State, had testified that on the day in question, between the hour of 6:00 and 6:30 P. M., he was going from the town of Timpson towards his home on Highway No. 35; that he met appellant driving a truck and recognized him; that in order to avoid a collision with the truck he drove his automobile almost off the hard surface part of the highway. He was then asked to tell how appellant was driving, to which the witness replied that he was going from one side of the road to the other and that the witness had to get clear off the highway to keep from being struck by the truck. Objection was made to the foregoing answer with the request that the jury be instructed not to consider it. This was granted and the statement withdrawn. The District Attorney pursued his inquiry further and the court, apparently recognizing his error in withdrawing the evidence, permitted the witness to answer such further questions and to give the reply that there was something wrong with the accused; that he was drunk. It is our opinion that this bill fails to reflect reversible error. See Riddle v. State, 107 Tex. Cr. R. 571; Johnson v. State, 147 S. W. (2d) 811, and authorities there cited.

No error appearing in the record, the judgment of the trial court is affirmed.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

ON APPELLANT'S MOTION FOR REHEARING.

BEAUCHAMP, Judge.

The motion for rehearing in this case deals with questions discussed in the original opinion. We have attempted to consider all the authorities referred to in the motion but we are unable to locate any of them except Roberts v. State, 156 S. W. 651. This case in no way aids the motion.

We have re-examined the bills of exception in the light of the motion and, considering the language of them, we are unable to sustain the contention.

The motion for rehearing is overruled.